LYONS, Judge,
delivered the resolution of the court as follows:
This is a suit founded on a charter party, made on the 5th of August, 1779, between the appellant and the appellees, for the charter of the brig General Scott, belonging to the appellant, on a voyage from Ozborne’s to the West Indies, and back to this country.
The charter party stipulates, 1. That the brig shall be completed and fitted for sea by the 20th of September, then next following. 2. That the appellees shall load her with tobacco, to be carried to the island of Curra-coa, or St. Eustatia, as the appellees might direct, and pay, for freight, one half of the cargo at the port of delivery. 3. That the appellees will pay half the craftage on board, and half the duties here, and in the West Indies. 4. That, on the arrival of the brig at St. Eustatia, or Curracoa, the appellees’ factor, in conjunction with the captain of the vessel, shall determine, whether to send a small cargo of goods, or cash, to Hispaniola, to purchase a return cargo on joint account, or separate account, as they may agree; which is to consist of such articles, as the said factor and captain shall think best for the concerned, allowing the brig the usual freight on the goods carried, from Eustatia or Curracoa, to Hispaniola ; but nothing for money. 5. That the appellees’ agent in Eustatia or Curracoa, where the vessel may arrive, shall be directed to render the captain “every good office, in advising him for the best.” 6. That, if the captain, from choice or want of funds, should decline shipping one half of the return cargo for the appellant, the appellees may, if they please, fill her up; and, for all that is over and above their one half of her burthen, shall pay freight for such surplus, (to be distinguished by a separate bill of ^lading signed in Hispaniola,) at the rate of 10 per cent, on the sales, or a tenth part of the goods here. 7. That the appellees shall pay half the port charges in Hispaniola, and the cargo be charged with no more commissions than is usually paid there ; and should the brig be loaded fully back on joint account, the cargo to be delivered here, in like manner, upon joint account. 8. That, on delivery of the brig’s cargo here, or in any safe port, to the north or south, in the United States, the appellees shall pay the appellant ^1000, continental money, provided the brig was of the burthen of 140 hogsheads of tobacco ; or, in that proportion, for a greater or less burthen.
The appellees, agreeably to the charter party, loaded the brig with tobacco in due time, and wrote to M’George, enclosing him a copy of the charter party, and apprizing him that they had promised the appellant, his (M’George’s) good offices in advising the captain, as mentioned in the charter party. But the brig was not got ready nor sailed, before the 9th of December, 1779.
In the mean time, the appellant sold his *835 moiety of the adventure to Braxton ; and the vessel proceeded to Eustatia, where she delivered the cargo; thence went to Hispaniola; took in a load of West India produce ; and arrived safe, with it, in Virginia, where it was delivered to the owners.
A controversy, having arisen between the appellant and the appellees, relative to a difference in account respecting some Taffia rum, which the appellant ailedged was overcharged, the appellees sued him in the county court of Henrico, and recovered the whole amount claimed.
Upon which the appellant filed a bill of injunction in the high court of chancery, to be relieved as to the overcharge for the Taffia, and stating his claims upon the charter party ; which he said had been violated by the appellees, who had not given, as he alleged, the directions stipulated for to M’George and Douglass, when required by him ; in consequence of which, he had been obliged to sell to Braxton *at a loss, and prays that the damage may be ascertained by a jury. The appellees, by their answer, insist upon the letter of the charter party ; deny that there were any other stipulations, than those contained in it; and say that they have fully performed the latter.
The court of chancery at first dissolved the injunction except as to the excess alleged for the Taffia, but, upon the hearing, dismissed the bill with costs ; and Dove has appealed to this court.
The appellant sets up two claims :
1. Compensation for damages sustained, in consequence of the sale to Braxton.
2. Deduction, from the verdict in Henrico court, on account of a supposed overcharge for Taffia rum.
In support of the first, it is alleged, that the appellant was entitled to the active services of M’George and Douglass in the West Indies, in consideration of his having relinquished his right to further freight upon the return cargo ; and that the failure of the appellees to furnish instructions for that purpose obliged him to sell to Braxton at a sacrifice, which produced a loss, that should be compensated for.
The claim, to the services, was endeavored to be maintained, 1. By the assertion, that there were verbal stipulations, to that effect, superadded to the charter party. 2. By internal evidence to be derived from the charter party.
The just remark, to the first assertion, is, that there is no proof of the verbal stipulations ; for the answer of the appellees denies, that there were any such ; and it stands un-contradicted by any fact, or witness, in the cause : which destroys the appellant’s pre-tentions, upon that score.
The second assertion is equally unfounded. E'or it is not true, that the charter party contains internal evidence of a right to such services, from M’George and Douglass, as it only stipulates for their good offices in advising the captain, and not for their agency on behalf of the appellant. Dor the captain was to be his agent; and was to conduct every thing relating to his interest. M’George and Douglass *to do nothing more than give advice : which it does not appear was ever refused.
But the whole argument, for the appellant, upon his supposed right to freight for the return voyage, and the relinquishment of it, being the consideration for the ulterior services of M’George and Douglass, is misconceived and without foundation. E'or it was all one voyage, that is to say, a voyage from Virginia to Curracoa or St. Eustatia ; from thence to Hispaniola ; and, from Hispaniola, back to Virginia, or some northern or southern port in the United States : and the only freight, which the appellees were to pay, was the half of the outward cargo, and the ^1000 continental money (both which were received, the first in Eustatia, and the other by the Henrico verdict), unless the captain declined to purchase a return cargo, and the appellees filled up the residue of the vessel; in which case, they were to pay freight, in the words of the charter party, for “ all above, their one half.” Which, necessarily, implies, that they were not to pay any thing more, for their own half outward, or inward. The same observation applies to the passage from Curracoa or Eustatia to Hispaniola ; for, in that case too, additional freight was to be paid by the terms of the articles of affreightment: So that, in every instance, where it was intended, it is expressly provided for in the charter party, thereby affording an irresistible inference, that it was to be paid in no other case. For had it been otherwise, it would have been declared, and not left to such obvious implication, from the excepted cases.
It was said, however, that Eove would have acted absurdly in suffering his vessel to go to Hispaniola, out of her way, at additional risk, and bring back the return cargo, without any, or very little freight ; and if he submitted to it, it must have proceeded from hardship and oppression, on the part of the appellees. On which it is to be remarked, in the first place, that the increase of distance, and the additional risk, if there was any, were compensated for in the stipulated freight. But suppose it were otherwise, how *would that alter the case ? For still the existing contract was actually made : and whether wisely, or unwisely, is of no consequence to the decision ; for it is the business of the court to decide what the contract is, and not to speculate upon the prudence, or imprudence, of the parties in the transaction. Much less have we to do with the hardship of the contract, if there had, in fact, been any. For it is not the appellees, who come into a court of equity to enforce a hard bargain which the court might or might not have decreed, according to circumstances ; but it is the appellant, who comes to complain of the hardship, and to ask relief, as far as it suits himself, but to insist upon the contract in other respects, with an alteration of the terms of it, to the great disadvantage of the appellees. A solecism which a court of equity will never tolerate; for if the appellant might have resisted the whole contract, upon the ground of hardship, in a suit against himself why may not the appellees resist the alteration upon the same ground ? But there was, in fact, no hardship in the case; for Nicolson proves that there was nothing oppressive in the articles; and that the appellees had chartered several other vessels upon more advantageous terms.
*836 The result is, that the whole foundation of the claim fails; and the claim, itself, falls with the foundation.
But were it otherwise, it is not proved, that there was any loss sustained, by the sale to Braxton.' For the appellant sold all his advantages in the adventure; which included every benefit to arise from it; and it is not shewn that the price was inadequate.
There is another view of the subject, however, which deserves consideration. How can the appellant come into a court of equity, to complain of a breach, by the adversary party, of a contract, which he has violated himself? For, by the terms of the charter party, the brig was to be ready for sea, on the 20th of September ; but she did not, in fact, depart, until the 9th of December, almost three months afterwards, and then, probably, with increased danger of *capture. It is plain, under 'these circumstances, that the appellant could not have recovered, even at law, upon a breach of the charter party by the appellees, if there'had been one, as he could not have averred performance on his own part. ' For it is not a case of mutual independent covenants, upon which’ either party may sue, without shewing performance by himself ; but performance, on one side, is the consideration for performance, on the other ; so that neither could the appellees have supported an action against'the appellant, for not sailing at'the appointed time, without shewing that the tobacco had been shipped; nor could the appellant have sustained a suit at law against the appellees, for a breach, if there had been one, as to the services of M’George and Douglass, without shewing that the vessel had sailed at the prescribed period.
But if this be so at law, the case is much stronger in equity. For he who comes into a court of equity, to ask relief, must be able to shew that he has done it himself.
The claim for the supposed overcharge for the Taffia rum, was properly disallowed by the chancellor at the final hearing.of the cause; and, upon the whole, the court discovers no error in the decree: which is unanimously affirmed